**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **SCARLETT PIPKIN,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO.** |
| | : | **3:03CV0019 (MRK)** |
| **BRIDGEPORT BOARD OF EDUCATION,** | : | |
| **SUPERINTENDENT SONIA DIAZ SALCEDO,** | : | |
| **in her official and individual capacities,** | : | |
| **ASSISTANT SUPERINTENDENT, KENNETH** | : | |
| **HENRICI, in his official and individual** | : | |
| **capacities, INTERIM MATHEMATICS** | : | |
| **DIRECTOR, RICARDO ROSA, in his official** | : | |
| **and individual capacities, GEAR UP** | : | |
| **DIRECTOR, LEROY DUPEE, in his official** | : | |
| **and individual capacities AND TEACHER,** | : | |
| **JORGE PEZO, in his official and individual** | : | |
| **capacities,** | : | |
| | : | |
| **Defendants.** | : | **MAY 10, 2004** |

**DEFENDANTS' MEMORANDUM OF LAW IN REPLY TO**
**PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Defendants Sonia Diaz Salcedo, Kenneth Henrici, Ricardo Rosa and Jorge Pezo, by and

through their undersigned counsel, submit this memorandum of law in reply to Plaintiff's

Opposition to Defendants' Motion for Summary Judgment.

**I.     ARGUMENT**

      **A.     Plaintiff Fails to State a Claim Upon Which Relief Can be Granted**
              **For Violation of Her Fourteenth Amendment Rights**

Plaintiff's Memorandum in Opposition does not address Defendants' motion with respect

to her claim of violation of her Fourteenth Amendment rights.  As set forth in Defendants'

Memorandum, Plaintiff fails to establish deprivation of either liberty or property, and thus her claim in this regard fails. See Def. Mem., pp. 25-27. Accordingly, judgment as a matter of law in favor of Defendants is warranted on Count One.

**B.    Plaintiff Fails to Establish a Claim of Hostile Work Environment in Violation of Title VII**

Plaintiff's Memorandum in Opposition does not address Defendants' motion with respect to her claim of hostile work environment in violation of Title VII. As set forth in Defendants' Memorandum, Plaintiff fails to establish racial taunting, stereotyping, and intimidation that is "so persistent and severe that it alters 'the conditions of the victim's employment and create[s] an abusive working environment.'" *Allah v. City of New York Dept. of Parks and Recreation*, No. 01-9114, 2002 WL 31119698, at *3 (2d Cir. Sept. 25, 2002) (Leval, Calabresi, Poole, C.J.), *cert denied* 537 U.S. 1232, 123 S.Ct. 1357 (2003) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23, 114 S. Ct. 367 (1993)); see Def. Mem., pp. 32-38. The incidents asserted by Plaintiff are insufficient to establish a claim of hostile work environment in violation of Title VII, and at best, reveal that she may have been upset or embarrassed by John Perachio's criticism of her performance. Accordingly, judgment as a matter of law in favor of Defendants is warranted on this claim.

**C.    Plaintiff Fails to Establish a Prima Facie Case of Discrimination Under Title VII, 42 U.S.C. § 1981 and/or the ADEA**

**1.    Summer 2001 Gear/Up Program**

Plaintiff fails to establish a prima facie case of discrimination based upon the record of evidence, which leaves no issue of material fact as to the basis for Plaintiff's denial of a teaching

position in the Summer 2001 Gear Up Program. Indeed, there can be no dispute that Defendants' decision was based upon Plaintiff's performance.

There is no dispute that Leroy Dupee was the supervisor of the Gear Up Program in the Summer of 2000 and that given the shortage of applicants for open positions, all who applied were hired. Regardless of whether Dupee had previously evaluated Plaintiff's performance as a Mathematics Resource Teacher as meeting the District's requirements, the core issue is whether her was satisfied with her performance in the Summer 2000 Gear Up Program.

Leroy Dupee's testimony that he was dissatisfied with Plaintiff's performance as a teacher in the Summer 2000 Program is corroborated by the members of the Teacher Selection Committee and Defendant Rosa. Given his prior favorable evaluations of Plaintiff in connection with her position, there is certainly no reason to infer that he would fabricate performance issues. Indeed, his testimony about Plaintiff's performance cited to issues that arose based on his observation and interaction with her during the course of the Summer 2000 Program.

As reflected in Dupee's deposition testimony and the affidavits from the members of the Teacher Selection Committee, Dupee discussed that he was dissatisfied with Plaintiff's performance during the Summer 2000 Program. He specifically presented the following criticism of her performance:

- Plaintiff stopped making contact calls to students despite his directive that such calls be made by the teachers;
- When confronted about her failure to make calls, Plaintiff told him it was not her job to contact students;
- Plaintiff failed to follow curriculum;
- Plaintiff's inability to work with the graphing calculator necessitated moving her students to another classroom.

It is unrefuted that Dupee explicitly told the Teacher Selection Committee that he did not recommend Plaintiff for a position in the Program for the following Summer.  Likewise, there is no dispute that the Teacher Selection Committee unanimously decided not to recommend Plaintiff for the subsequent Summer 2001 Program based on the report and recommendation from Dupee.  See Def Mem., pp. 9-12, citing Dupee Dep., pp. 18-19, Pezo Aff., Birks Aff. and Gombos Aff.).  Even if the Court were to find that the Committee's role was, technically, only to recommend candidates and that the ultimate decision was to be made by Ricardo Rosa, the record of evidence is unrefuted that Rosa understood that his role was to hire those who were recommended and to send letters to the successful candidates over the joint signatures of himself and Leroy Dupee.  See Def. Mem., p. 13, citing . Rosa Dep., pp. 22-24, Dupee Dep. Exhs. 6, 7).  There is no evidence that the successful candidates were anyone but those whom the Committee recommended to him.

Plaintiff attempts to create an issue of fact in order to suggest an inference of discrimination by explaining away her unsatisfactory performance in the Summer 2000 Program.  She contends, for example, that she stopped contacting students because she believed it to be futile and that the need to move her students to another classroom due to her inability to use a graphing calculator caused only "minimal, if any, disruption to the delivery of the program's curriculum."  See Pl. Mem., p. 4.  She suggests that the focus should be on the fact that her students were enrolled in Algebra I for the Fall 2000 school year.

Plaintiff also contends that she is more qualified than the teachers who were selected for the Summer 2001 Program.  She relies on the fact that other Mathematics Resource Teachers

4

were selected and that other successful candidates had less seniority and, in some instances, held a provisional certification as compared to her regular teaching certification, which suggests basic competence to teach. Essentially, Plaintiff's argument is that only the most senior staff should have been selected, regardless of merit, and that Defendants' decision to select others creates an inference of discrimination. This argument misses the point and must fail.

The fact is that there is no evidence that Dupee misrepresented Plaintiff's performance as deficient. Likewise, there is no evidence that a teacher's performance in the Summer 2000 Program was irrelevant and that Plaintiff's performance should not have been considered. Further, there is no evidence that any of the successful candidates had similar performance problems. No reasonable trier of fact can find that the circumstances of Defendants' failure to hire Plaintiff for the Summer 2001 Gear Up Program give rise to an inference of discrimination.

<strong>2.    Transfer to a Classroom Assignment</strong>

In similar fashion, Plaintiff claims that the circumstances of her transfer give rise to an inference of discrimination as required to establish a prima facie case of discrimination. As an initial matter, Plaintiff's claim must fail since the classroom assignment does not constitute an adverse employment action. The record of evidence is undisputed that there is no difference in salary, fringe benefits or other benefits between the two assignments. (Plaintiff Dep., p. 35; Pannozzo Dep., p. 44; Exh. 5). Teachers holding a non-classroom assignment are entitled to the same contractual rights, salary and benefits as those who are assigned to a classroom. (Plaintiff Dep., p. 35; Pannozzo Dep., p. 44; Exh. 5). As noted in Defendants' Memorandum, Plaintiff admits that the assignments are equal financially but provides her subjective opinion, in

summary fashion, that: "[a] step away from being in the classroom with 20 other students is a step up." (Plaintiff Dep., p. 156).

As discussed in Defendants' Memorandum, the difference in the nature of the Mathematics Resource Teacher as compared to the classroom teacher is that the Mathematics Resource Teacher worked with small groups of students as directed by the building principal and would provide professional development support or model lessons with math teachers in the buildings to which they were assigned. (Pannozzo Dep., p. 23). In contrast, a classroom teacher, while still an instructor, would work with larger groups of students because the whole class would be assigned to the classroom teacher. (Id., pp. 23-24). The classroom teacher could still work with small groups of students within the large class structure and would still attend professional development as a teacher within the Board. (Id.).

Plaintiff's reliance on *Hunt v. Rapides Health Care Systems, LLC*, 277 F.3d 757, 769 (5th Cir. 2001) in support of her claim of adverse employment action is misplaced. That case involved, in pertinent part, an employer's action in offering a nurse a night shift position upon her return from leave under the Family and Medical Leave Act (FMLA). *Id.* at 769. In its decision that the shift change did not constitute an adverse job action in violation of the anti-retaliation provision of the FMLA, the Fifth Circuit Court of Appeals noted its prior decisions that a job transfer may constitute an adverse employment action if it makes the job "objectively worse." *Id.* at 770 (*citing Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir.1999); *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir.1996); *Click v. Copeland*, 970 F.2d 106, 109 (5th Cir.1992)).

6

The standard relied upon by Plaintiff is not that espoused by this Circuit. Indeed the Second Circuit has held that it determines whether an assignment is "materially adverse" in determining whether an action constitutes an adverse employment action for purposes of Title VII. *Galabya v.New York City Board of Education*, 202 F.3d 636, 640 (2d Cir.2000). A materially adverse change might be indicated by a "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities or other indices ... unique to a particular situation." *Id.*

Plaintiff's claim must fail since there is not a shred of evidence that her changed assignment to teach in a classroom was "materially adverse" as compared to an assignment to teach small groups of students with a focus on remedial work to get them to pass standardized tests, as described by Plaintiff. [1] There is no evidence to support a finding that the classroom assignment is a demotion or has a negative effect on a teacher's career. Any suggestion that there is some higher status attributed to the Mathematics Resource Teacher assignment should be afforded no weight as it is nothing more than a conclusory assertion and flies in the face of the very purpose of the position of teacher – to educate children.[2] *Cf. Patrolmen's Benevolent Association of the City of New York v. City of New York*, 310 F.3d 43, 51 (2d Cir. 2002), *cert. denied*, 538 U.S. 1032, 123 S.Ct. 2076 (2003) (transfer of police officer could be considered

---

[1] As noted in Defendants' Memorandum, Plaintiff could have chosen to teach Math, which involves teaching one subject area to classes of students. See Def. Mem., p.22. Plaintiff admits that she is certified to teach Kindergarten through Eighth Grade. Thus, her decision to accept an elementary classroom assignment did not place her in an area in which she lacked education or training. See Pl. Mem., p. 1.

[2] Notably, despite her comment, when Plaintiff was offered two Numeracy Coach assignments, she declined them.

adverse where, among other things, he was not assigned to a unit that used his training and experience in domestic violence issues); *see Hurdle v. Board of Education of City of New York*, No. 01 Civ 4703, 2002 WL 31834454 at \*3 (S.D.N.Y. Dec. 16, 2002) (Baer, J.) (copy attached) (administrator's change in assignment from building principal to district assignment overseeing special education issues was materially adverse based on factors such as lack of training, loss of a secretary, inability to send letters in her own name and having to report to a fellow principal and guidance counselor).

Contrary to Plaintiff's claim that her performance was satisfactory and that she was unfairly criticized, the record of evidence reveals that John Perachio evaluated her performance as having "notable concerns." While she refers to some of Perachio's criticism in her Memorandum in Opposition, Plaintiff acknowledged repeatedly in her deposition that he had expressed his dissatisfaction to her on several occasions. For example, Perachio wrote to her to raise issues with her relationship with colleagues, failure to hold workshops and requirement that she hand in lesson plans. (Plaintiff Dep., pp. 60-63).

Further, in her summative Performance Appraisal for the 2001-02 school year, Perachio identified Plaintiff's performance deficiencies. (Plaintiff Dep., pp. 64-67; Exh. 4, attached 2001-02 Performance Appraisal). Assistant Superintendent Henry Kelly, who is African American, heard Plaintiff's grievance and upheld the Performance Appraisal with the sole exception that recommendation No. 5, that Plaintiff should not be required to substitute for absent math teachers, be stricken. (Id.). No other aspect of the Appraisal was changed. (Id.).

Plaintiff left Blackham School upon receipt of her Appraisal, never to return, and refused to submit documentation in support of her absence for the rest of the year. (Plaintiff Dep., p. 66; see Perachio Aff., ¶ 5e). She maintained her refusal to provide the required documentation despite further requests made by Perachio, including in the subsequent school year. (Plaintiff Dep., p. 136; see Perachio Aff., ¶ 7e).

Despite Plaintiff's own belief that her performance was satisfactory, there is no basis for concluding that Defendants were motivated by some other reason. To the contrary, the record leaves no doubt that Plaintiff's Performance Appraisal was consistent with Perachio's comments to Plaintiff during the course of the school year and the criticism contained therein was deemed valid by Perachio's superior.

Thus, the record is void of any evidence upon which a trier of fact would find an inference of discrimination with respect to Plaintiff's transfer. Accordingly, Plaintiff fails to establish a *prima facie* case of discrimination in violation of Title VII or the ADEA, and summary judgment in favor of Defendants is warranted.

### D.   Plaintiff's Claim of Discrimination Must Fail Since There is No Issue of Material Fact that Defendants' Reasons Are Pretextual

Even if the Court should find that Plaintiff has established a *prima facie* case, Defendants have produced evidence that the alleged adverse actions toward Plaintiff occurred for some legitimate, nondiscriminatory reason. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097 (2000); *Byrnie v. Town of Cromwell Bd. of Educ.,* 243 F.3d 93, 102 (2d Cir.2001). A defendant "need not persuade the court that it was motivated by the reason that it provides; rather, it must simply articulate an explanation that, if true, would connote lawful

behavior." *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d Cir.1998). It is a burden" of production, not persuasion." *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097.

In the instant case, Defendants meet this *de minimis* burden by asserting that the basis for its decision not to hire Plaintiff for the Summer 2001 Gear Up Program and her transfer were due to her performance. *See See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510, 113 S.Ct. 2742 (1993) (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089 (1981)). As such, the remaining issue is whether Plaintiff has raised a genuine issue of material fact about whether that reason was merely a pretext for discriminating against her because of her race, color and/or age. She has not.

To show pretext, in the context of a summary judgment motion, "the plaintiff must establish a genuine issue of material fact either through direct, statistical or circumstantial evidence as to whether the employer's reason for discharging her is false and as to whether it is more likely that a discriminatory reason motivated the employer to make the adverse employment decision." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 401 (2d Cir.1998) (quoting *Gallo v. Prudential Residential Servs., Ltd. Partnership,* 22 F.3d 1219, 1225 (2d Cir.1994)). The factual inquiry on the question of pretext is substantially more specific than for the prima facie case. *See St. Mary's Honor Ctr.,* 509 U.S. 502, 516, 113 S.Ct. 2742. However, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." With respect to such a showing, this Court has stated:

> A plaintiff may show pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the

> employer's proffered legitimate reasons for its action that a reasonable
> factfinder could rationally find them unworthy of credence and hence infer
> that the employer did not act for the asserted non-discriminatory reasons."
> (Citations omitted).

*Bombero v. Warner Lambert Co.*, 142 F.Supp.2d 196, 203, fn 7 (D.Conn. 2000) (quoting

*Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir.1999) (quoting *Morgan v. Hilti,*

*Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997)); *see also Olson v. General Elec. Astrospace,* 101 F.3d

947, 951-52 (3d Cir.1996) (same).

    In the instant case, the evidence asserted by Plaintiff to cast doubt on Defendants'

proffered reason is insufficient to support a finding that it is not the true reason for the

challenged decision. First, as discussed above and in Defendants' Memorandum, the evidence

clearly warrants a finding that with respect to the Summer 2001 Gear Up Program other,

Plaintiff's performance in the Summer 2000 Program caused (i) Leroy Dupee, her supervisor, to

recommend that she not be hired, (ii) the Teacher Selection Committee to unanimously decide

not to recommend her for the Summer 2001 Program, and (iii) the subsequent issuance of a

rejection letter from Rosa and Dupee to her. Defendants have been consistent in their

explanation for the decision. *See Bom*bero, 142 F.Supp. 2d 203 (jury issue of pretext not

presented where record showed that employer gave essentially the same reasons for decision to

hire successful candidate).

    Plaintiff's explanation of her conduct and inadequacies during the Summer 2000 Program

and contention that based on seniority and certification she was more qualified than other

successful candidates do not create an issue for a trier of fact as to whether Defendants' reason is

false. Similarly, Plaintiff offers nothing of significance on the issue of her transfer and cites

only to the fact that she had more seniority than others and that she was never advised of the reasons for it by the Superintendent or Carole Pannozzo. See Pl. Mem., p. 15. She offers no evidence to cast doubt on Defendants' reason.

Accordingly, Plaintiff's failure to set forth evidence upon which a trier of fact could find pretext with respect to Defendants' reasons for the denial of the Gear Up teaching position or transfer warrants judgment in favor of Defendants on her Title VII, 42 U.S.C. § 1981 and/or ADEA claims in Counts One, Four and Five.

### D.     The Record is Void of Evidence to State a Claim for Intentional Infliction of Emotional Distress in Count Two

The record of evidence in the instant case falls far short of creating a genuine issue of material fact as to whether Defendants' conduct was extreme and outrageous. Indeed, when questioned in deposition about her claims with respect to each Defendant, Plaintiff provided no basis for her characterization of Defendants' actions as egregious other than that she was distressed by them and suffered losses that resulted from her failure or refusal to seek after-school and summer employment subsequent to the denial of the Summer 2001 position. Her Memorandum in Opposition simply reiterates her contention that Defendants' characterizations of her performance, as well as the failure to hire her for the Gear Up Program and the involuntary transfer, rise to the level of "Outrageous!" However, there is no legal support for such a conclusion. See Pl. Mem., p. 20.

Plaintiff now further asserts that her claim is based on actions taken by John Perachio and that the other Defendants are liable based on his conduct. See Pl. Mem., pp. 19-21. Nonetheless, the record is clear that John Perachio's conduct is not "so extreme in degree, as to be beyond all

possible bounds of decency . . . ."  Defendants thoroughly presented and discussed Perachio's actions in their Memorandum.  See Def. Mem., pp. 32-39.

Thus, even if viewed in a light most favorable to Plaintiff, Perachio did not conduct himself or treat Plaintiff in a manner that would cause a reasonable person to exclaim, "Outrageous!"  Accordingly, Plaintiff's claim for intentional infliction of emotional distress in Count Two is legally insufficient and the Court should grant judgment as a matter of law in favor of Defendants Sonia Diaz Salcedo, Kenneth Henrici, Ricardo Rosa and Jorge Pezo.

### E.     Plaintiff Fails to State a Claim for Negligent Infliction of Emotional Distress in Count Three

As reflected in Defendants' Memorandum, pp.46-48, Plaintiff's claim is founded on actions alleged to have occurred during the course of her employment.  In fact, Plaintiff is still employed with Defendant.

It is well-established in Connecticut "that an individual municipal employee may not be found liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context, as distinguished from conduct occurring in the termination of employment."  *Perodeau v. City of Hartford,*, 259 Conn. 729, 762-63, 792 A.2d 752 (2002).  This Court has ruled the same, consistent with the Connecticut Supreme Court.  *See Abate v. Circuit-Wise, Inc.,* 130 F.Supp.2d 346 (D.Conn. 2001); *Gomez-Gil v. University of Hartford*, 63 F.Supp.2d 191, 194 (D. Conn. 1999).  Plaintiff offers no precedent in support of a decision to the contrary. See Pl. Mem., p. 19.

Accordingly, Plaintiff's claim for negligent infliction of emotional distress in Count Three is legally insufficient, and the Court should grant judgment as a matter of law in favor of

Defendants Sonia Diaz Salcedo, Kenneth Henrici, Ricardo Rosa, Jorge Pezo and the Board of Education.

## II.    CONCLUSION

For the foregoing reasons, Defendants Bridgeport Board of Education, Sonia Diaz Salcedo, Kenneth Henrici, Ricardo Rosa and Jorge Pezo, respectfully request this Court to grant summary judgment in favor of Defendants on each count of the Corrected Amended Complaint.

Done at Bridgeport, Connecticut, this 10th day of May, 2004.

LISA M. GRASSO, ESQ.
Federal Bar No. ct03768
DURANT, NICHOLS, HOUSTON,
HODGSON & CORTESE-COSTA, P.C.
1057 Broad Street
Bridgeport, CT 06604
(203) 366-3438
ATTORNEYS FOR DEFENDANTS
SONIA DIAZ SALCEDO, KENNETH HENRICI,
RICARDO ROSA & JORGE PEZO

Not Reported in F.Supp.2d
(Cite as: 2002 WL 31834454 (S.D.N.Y.))
**H**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Sheila HURDLE, Plaintiff,
v.
THE BOARD OF EDUCATION OF THE CITY OF
NEW YORK et al., Defendants.

No. 01 Civ. 4703(HB).

Dec. 16, 2002.

Former public school principal brought § 1983 action against board of education, alleging retaliation in violation of her First Amendment speech rights. On board's motion for summary judgment, the District Court, Baer, J., held that: (1) principal's complaints about lack of input from school staff and community into formulation of corrective action plan (CAP) to rectify shortcomings in performance of students at school related to matters of public concern, and thus principal's speech was protected by the First Amendment, and (2) fact questions as to whether principal's reassignment to district office constituted adverse employment action, and as to whether such action was causally connected to principal's protected speech, precluded summary judgment on First Amendment retaliation claim.

Motion denied.

West Headnotes

[1] Constitutional Law ☞90.1(7.3)
92k90.1(7.3)

[1] Schools ☞147.28
345k147.28

Public school principal's complaints about lack of input from school staff and community, including parents of students, into formulation of corrective action plan (CAP) to rectify shortcomings in performance of students at school, related to matters of public concern, and thus principal's speech was protected by the First Amendment. U.S.C.A. Const. Amend. 1.

[2] Federal Civil Procedure ☞2497.1
170Ak2497.1

Fact questions as to whether principal's reassignment to district office constituted adverse employment action, and as to whether such action was causally connected to principal's protected activity of complaining about lack of input from school staff and community into formulation of corrective action plan (CAP) to rectify shortcomings in performance of students at school, precluded summary judgment on principal's First Amendment retaliation claim against board of education. U.S.C.A. Const. Amend. 1.

*OPINION & ORDER*

BAER, J.

I. INTRODUCTION

**\*1** Defendants bring this motion for summary judgment against plaintiff, Sheila Hurdle, who is suing the defendants pursuant to 42 U.S.C. § 1983. Hurdle alleges that the defendants conspired with each other to retaliate against her after she spoke out about deficiencies in the Corrective Action Plan ("CAP") that was formulated to address apparent shortcomings in the performance of the students at the school where she was principal. In short, this is a First Amendment claim by the plaintiff in the context of a § 1983 lawsuit. For the following reasons, defendants' motion for summary judgment is denied.

II. BACKGROUND

In 1992, Hurdle was appointed principal of Public School ("P.S.") 113. After she was principal of the school for four years, the State Education Department ("SED") identified P.S. 113 as among the schools with students who were underperforming on standardized reading tests and whose performance was not improving. The SED placed the school in a "School Under Registration Review" status. Once the SED identifies a school as failing to meet New York state standards, it gives the school three years to meet certain standards or else the school must be closed or "redesigned." If a school is kept open but redesigned, the superintendent of the district may choose to keep the existing principal or reassign the principal to another position.

As a result of the poor performance by the students at P.S. 113, Patricia Romandetto, the Community Superintendent for Community School District 3, and her staff prepared a CAP to try to improve the test scores of students at the school. Despite the recommendations in the CAP, the standardized results

for 1998 showed, at best, marginal improvement. Community Superintendent Romandetto concluded that the scores of P.S. 113 would not significantly improve in the last year of its SURR status, and, in consultation with the officials of the New York City Board of Education, decided to redesign P.S. 113 by adopting the strategy developed at another school, which was academically successful. Romandetto further decided to reassign Hurdle to the District Office, to become Comprehensive Health Coordinator and to oversee the "Home Schooling, Comprehensive Health and Supervision and Administration of From 504 Protocols." She remained there until she retired on September 1, 2002.

## II. STANDARD FOR SUMMARY JUDGMENT

Evidence in support of a motion for summary judgment must be reviewed in a light most favorable to the non-movant. FRCP 56(c), *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If, when "[v]iewing the evidence produced in the light most favorable to the nonmovant ... a rational trier could not find for the nonmovant, then there is no genuine issue of material fact and entry of summary judgment is appropriate." *Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991). While the burden to demonstrate that no genuine issue of material fact rests solely with the moving party, *FDIC v. Giammetti,* 34 F.3d 51, 54 (2d Cir.1994), once the moving party has provided sufficient evidence to support a motion for summary judgment, the opposing party "must set forth specific facts showing that there is a genuine issue for trial" and cannot rest on "mere allegations or denial." Rule 56(e); *see Rexnord Holding, Inc. v. Biderman,* 21 F.3d 522, 525-36 (2d Cir.1994). "If the evidence [non-movant] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50 (citations omitted). An "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III. DISCUSSION

*2 To succeed on her First Amendment claim, Hurdle must demonstrate by a preponderance of evidence that (1) she engaged in free speech concerning matters of public concern, (2) she suffered an adverse employment action, and (3) the speech

was, at minimum, a substantial or motivating factor for the adverse employment action. *Phillips v.. Bower,* 278 F.3d 103, 109 (2d Cir.2002); *Blum v. Schlegel,* 18 F.3d 1005, 1010 (2d Cir.1994). The burden on the plaintiff to establish the *prima facie* elements of her claim, however, are minimal. *Scaria v. Rubin,* 117 F.3d 652, 654 (2d Cir.1997) (per curiam).

### 1. Protected free speech

[1] Hurdle contends that "she objected to the implementation of the 1998 CAP plan because she did not feel that it would have been in the best interest of the students who attended P.S. 113." Plaintiff's Mem. of Law at 5. Hurdle's contention, however, appears to be a little questionable given the fact that she had no objections to the content of the CAP. Hurdle Dep. at 69, 106. Indeed, Hurdle's "object[ion] to the implementation of the 1998 CAP plan" is belied by the fact that she "fought" to get the very resources recommended by the CAP. Plaintiff's Mem. of Law at 6, 8. The only aspect about the CAP that Hurdle actually found objectionable was the manner in which it was formulated, because she, her staff, and other members of the school community allegedly were not permitted, as required by the SED, to participate in the formulation of the plan. *Id.;* Exh. A to Romandetto Decl. Although there was nothing objectionable in the content of the CAP, Hurdle seems to imply that implementing the 1998 CAP would not have been in the best interest of the students because the CAP was not approved in a manner consistent with SED's directive. Apparently, at least according to Hurdle, community superintendent Romandetto falsely certified that the CAP included input from the principal and staff of P.S. 113. Hurdle Dep. at 71. Notwithstanding Hurdle's somewhat confused argument and inability to fathom improvements to the CAP that she, her staff, or others may themselves have recommended, I find that the lack of input from the school staff and community, including parents of school children at P.S. 113, into the formulation of the CAP relates to matters of public concern. *Pickering,* 391 U.S. at 574.

### 2. Adverse employment action

[2] Plaintiff contends that she suffered a "materially adverse change" in the terms and conditions of employment when she was reassigned to the district office. *Richardson v. New York State Dep't of Correctional Serv.,* 180 F.3d 426, 446 (2d Cir.1999). A materially adverse change might be indicated by a

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

"termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities or other indices ... unique to a particular situation." *Patrolmen's Benevolent Ass'n. of City of New York v. City of New York,* 310 F.3d 43, 51 (2d Cir.2002)(quoting *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000); *see also Wanamaker v. Columbian Rope Co.,* 108 F.3d 462, 466 (2d Cir.1997). In the instant case, plaintiff contends that in retaliation for her efforts to enable others to have input into the CAP and/or to obtain funding for the CAP's recommendations, the community superintendent reassigned her to a position with a lesser title and prestige, fewer and different responsibilities, and dramatically different reporting structure.

*3 As principal of P.S. 113, Hurdle was responsible for, *inter alia,* overseeing teachers at the school, supervising instructional programs for the children, ensuring SED standards were met, disciplining students, and acting as a liaison between the school and the community, and reporting to the superintendent of her district. Hurdle Aff. ¶ 8; Plaintiff Mem. of Law at 12. To attain her position as principal, she received a masters degree, participated at the Harvard Principals Center (a program that provides principals with skills and strategies to run a school), and served as an assistant principal and acting principal at other schools. Hurdle Dep. at 13-14, 21. The community superintendent reassigned Hurdle to the district office to assume responsibility over issues relating to children's special education classes, the HIV-AIDS curriculum mandate, ensuring vision and hearing screenings of students, immunizations, the mayor's fitness program, student suspension hearings, and home schooling. *See* Hurdle Dep. at 21-22; Hurdle Affid. ¶ 10. There is no evidence that Hurdle was provided the necessary training to assume responsibility over aspects of the special education related matters. *See, e.g.,* Hurdle Dep. at 21-22. Furthermore, in her new position, Hurdle no longer had a secretary, could no longer even send letters in her own name, and was placed in the awkward and somewhat embarrassing position of having to report to a fellow principal and a guidance counselor. Hurdle Affid. ¶ 10. Although I agree that the responsibilities in plaintiff's new position were not so fundamentally different as to render her experiences as principal completely "useless," *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 641 (2d Cir.2000), in view of the differences between her former and new position, I find that the a

jury could reasonably conclude that the transfer "was to an assignment that was materially less prestigious, materially less suited to [her] skills and expertise, or materially less conducive to career advancement." *Galabya,* 202 F.3d at 641 (citation omitted). In addition, although Hurdle's base salary remained the same at her new position, Hurdle lost the opportunity, because of her removal, to earn additional wages on the order of $10,000 to $20,000 per year for coordinating after-school services, Hurdle Dep. at 22-23, which would add further weight to the evidence that plaintiff's transfer altered the terms and conditions of her employment in a negative way. *De la Cruz,* 82 F.3d at 21. Accordingly, I find that a reasonable juror could conclude that Hurdle's transfer constitutes an adverse employment action.

3. Causal Connection Between Retaliation and Speech

To make out the third element of her claim, Hurdle must show that her protests about approving the CAP was, at minimum, a substantial or motivating factor for the adverse employment action. *Phillips,* 278 F.3d at 109. Defendants contend, by implication, that the poor performance of students at P.S. 113, would have been sufficient cause to remove Hurdle from her position as principal, and that as a gesture of magnanimity, the community superintendent reassigned her to the district office instead of giving her an unsatisfactory rating. Despite discussing at length the poor performance of the students at P.S. 113, defendants claim that the community superintendent *did not* reassign her because plaintiff performed unsatisfactorily, but rather out of a desire to help the students of P.S. 113 by providing the school with new leadership and direction. Defendants' Mem. at 17; Defendants' Reply Mem. at 4. Furthermore, defendants contend that the seven month gap between plaintiff's exercise of protected free speech and reassignment is too large to show a causal relationship.

*4 First, assuming the community superintendent reassigned Hurdle not because she found Hurdle's performance unsatisfactory, but rather for other reasons, I am at a slight loss to understand why Hurdle was not reassigned as a principal to another school, particularly in view of her years of experience and training as a principal. At other schools in the district that were closed or redesigned, the principal either remained at the same position or were transferred to another district to assume a new principalship. Hurdle Dep. at 99-100; Plaintiff's

**(Cite as: 2002 WL 31834454, \*4 (S.D.N.Y.))**

Counter-statement ¶¶ 8, 23. Despite her allegedly satisfactory performance, Hurdle was transferred to a position, which, as I found above, seemed to impose a materially adverse change on her professional career. Thus, the transfer seems to lend credence to plaintiff's position that similarly treated employees were treated better and that her protests about the CAP were a motivating and impermissible factor for her transfer. *Owen v. Thermatool Corp.,* 155 F.3d 137, 139 (2d Cir.1998); *DeCinctio v. Westchester County Med. Ctr.,* 821 F.2d 111, 115 (2d Cir.1987). At the very least, plaintiff has demonstrated a genuine issue of material fact as to whether the employer's asserted reason for the transfer was a pretext. *See Pasch v. City of New York,* 933 F.2d 1149, 1155 (2d Cir.1991) (finding summary judgment should be precluded where there are questions regarding an employer's motive in the adverse employment decision).

Secondly, although seven months may have elapsed from the time of plaintiff's speech and her subsequent reassignment, I find that fact alone insufficient to erase the causal connection that may exist between her speech and alleged retaliatory action. The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v.*

*Cornell Co-op. Extension of Schenectady County,* 252 F.3d 545, 554 (2d Cir.2001). Indeed, one can expect that "the life expectancy of a political grudge [can not be] established as a matter of law with such finite precision as Defendants suggest." *Benedict v. Town of Newburgh Town Bd.,* 125 F.Supp.2d 675, 678 (S.D.N.Y.2000). I find that the period between the alleged retaliatory action and protected activity to be sufficiently close in time that a jury could reasonably infer that the defendants were simply biding their time to take advantage of circumstances as a pretext to transfer plaintiff to a less favorable position in retaliation for attempting to arouse awareness of and to protest the procedure used to approve the CAP. *See, e.g., Gorman-Bakos,* 252 F.3d at 554-55 (citing numerous cases finding causal connection between alleged retaliation and pretext after several months elapsed).

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is DENIED.

**\*5** SO ORDERED

2002 WL 31834454 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was caused to be filed this 10th day of May 2004, via U. S. Mail, Certified Mail, Return Receipt Requested, to the following counsel and pro se parties of record:

      W. Martyn Philpot, Jr., Esq.
      Marc L. Glenn, Esq.
      Law Office of W. Martyn Philpot, Jr., LLC
      409 Orange Street
      New Haven, CT  06511

                                   Lisa M. Grasso