UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SCARLETT PIPKIN, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :   NO. 3:03CV19 (MRK) |
| | : |
| BRIDGEPORT BOARD OF EDUCATION, | : |
| ET AL., | : |
| | : |
| Defendants. | : |

**<u>MEMORANDUM OF DECISION</u>**

Currently pending before this Court is a Motion For Summary Judgment [doc. # 40] filed by all of the Defendants except Mr. Leroy Dupee, who was only recently served.[1]  For the reasons stated below, Defendants' Motion for Summary Judgment is GRANTED.

**I.**

At the outset, the Court notes that in her briefing and at oral argument on June 16, 2004, Plaintiff abandoned certain claims or made concessions that dispose of certain claims set forth in her Corrected Amended Complaint [doc. # 17] (the "Complaint").  First, Plaintiff has abandoned the Fourteenth Amendment claims asserted in Count One of her Complaint.  *See* Pl.'s Opp'n to Mot. for Summ. J. [doc. # 46] at 22 n.3 ("Pl.'s Opp.").  Second, Plaintiff has also abandoned her hostile work environment claims under Title VII, as asserted in Count Four of the Complaint.  *Id.*  Third, even though there is a suggestion in the Complaint that Defendants subjected her to

---

[1] For purposes of this Ruling and Order, the Court will refer to the moving Defendants collectively as "Defendants."

1

retaliation for filing a complaint with the Commission on Human Rights and Opportunities, *see* Complaint ¶¶ 23-24, Plaintiff's counsel acknowledged at oral argument that he had not briefed those claims and that, consequently, Plaintiff has also abandoned any retaliation claim as to all Defendants. Fourth, Plaintiff's counsel acknowledged at oral argument that as a result of information acquired during discovery, Plaintiff was no longer pursuing any claim against Defendants Ricardo Rosa or Kenneth Henrici, in either their individual or official capacities, and that judgment should enter in favor of those Defendants, in both their individual and official capacities, on all counts of the Complaint.

Finally, at oral argument, Plaintiff's counsel agreed that under Connecticut law, a defendant may not be liable for negligent infliction of emotional distress arising out of conduct occurring within a continuing employment context; that is, as Plaintiff's counsel acknowledged, a claim for negligent infliction of emotional distress is limited by Connecticut case law to conduct occurring in the context of a termination of employment. *See Perodeau v. City of Hartford*, 259 Conn. 729, 762-63 (2002); *accord Abate v. Circuit-Wise, Inc.*, 130 F. Supp. 2d 341, 346 (D. Conn. 2001). Since Plaintiff was not terminated by Defendants, her counsel rightly conceded at oral argument that all Defendants are therefore entitled to judgment on her negligent infliction of emotional distress claim in Count Three of the Complaint.

In light of these concessions, the only claims of Plaintiff that remain for disposition are the following: race discrimination in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, Count Four; age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 634, Count Five; and intentional infliction of emotional distress, Count Two.

II.

This Court has had several recent occasions to describe at length the standard for granting summary judgment, the added caution that courts should apply when ruling on a summary judgment motion in an employment case, and the burden shifting framework of *McDonnell Douglas* and its progeny. *See, e.g., Alphonse v. State of Connecticut Dept. of Admin. Servs.*, No. Civ.3:02CV1195, 2004 WL 904076, at *4 (D. Conn., Apr. 21, 2004); *Rexach v. Univ. of Connecticut, Dept. of Dining Servs.*, 313 F. Supp. 2d 100, 105-06 (D.Conn. 2004); *Foster-Bey v. Potter*, 296 F. Supp. 2d 195, 203 (D. Conn. 2003). There is, therefore, no need to repeat, yet again, what is already set forth in those decisions. Suffice it to say that in assessing the motion for summary judgment in this case, the Court has applied the standards, cautions, and framework described at greater length in those decisions.

As the parties' Rule 56 statements demonstrate, there are no material issues of fact regarding these events. With minor exceptions, none of which is material, Plaintiff admitted each one of Defendants' statements of undisputed facts. *Compare* Def.'s Statement of Undisputed Facts [doc. # 41] ("Def.'s Statement") *with* Pl.'s Local Rule 56(a)(2) Statement ("Pl.'s Statement") [doc. # 47].² Therefore, the only issue for this Court is whether those undisputed facts entitle Defendants to judgment as a matter of law.

---

² The Court notes that in several instances, Plaintiff denied a statement of undisputed facts without citing any admissible evidence to support the denial. *See, e.g.,* Pl.'s Statement at ¶¶ 93, 94. Under the District's Local Rules, the failure to cite admissible evidence in support of a denial is grounds for deeming the statement admitted. *See* D. Conn. L. Civ. R. 56(a)2. Furthermore, in other instances Plaintiff does provide citations in support of her denials but the cited material does not support the Plaintiff's denial, which would also justify the Court in deeming the statement admitted. *See, e.g.,* Pl.'s Statement at ¶¶ 39, 57. Regardless, the few statements of undisputed facts that Plaintiff does deny are not material.

Plaintiff's race and age discrimination claims arise from two events: (1) Defendants' failure to hire Plaintiff as an instructor during the summer 2001 Gear Up program; and (2) Defendants' transfer of Plaintiff from her position of Mathematics Resource Teacher in 2002.[3] The Court address each claim in turn.

### A.

Plaintiff is a 56-year old African-American female. She has worked for the Bridgeport Board of Education (the "Board") since 1970, has served as a Mathematics Resource Teacher for over 23 years, and has been assigned to the Florence Blackham School for the last 19 years. Def.'s Statement ¶ 2; Pl.'s Statement ¶ 2; Deposition of Scarlett Pipkin [doc. # 48] at 36, Ex. 1. Sometime before the summer of 2000, the Board received a grant to initiate a Gear-Up Program in seven schools. *See* Gear Up Project Overview at 1 [doc. #48], Ex. 5. Gear Up is a state funded school reform initiative which provides low income students with the necessary skills and counseling to make them competitive in obtaining a post-secondary education. *Id.* at 2. A key aspect of the program was to prepare 7th and 8th grade students for Algebra I. *Id.* at 1, 5.

The first summer session for Gear Up began in the summer of 2000. Def.'s Statement ¶ 23; Pl.'s Statement ¶ 23. Leroy Dupee, an African-American who was then 58 years old, served as the Director of the Gear Up Program for that summer. Def.'s Statement ¶ 59; Pl.'s Statement ¶ 59; Def.'s Statement ¶ 24; Pl.'s Statement ¶ 24. The Board sought instructors for the summer 2000 program but received fewer applications than instructors needed. Def.'s Statement ¶ 28;

---

[3] At oral argument, Plaintiff's counsel clarified that the remaining individual Defendants, Superintendent Salcedo and Messrs. Pezo and Dupee, are sued only for their participation in the refusal to hire Plaintiff for the summer 2001 Gear Up program, and that those individual defendants did not have any involvement in the 2002 transfer.

Pl.'s Statement ¶ 28. It is undisputed that because of the insufficient number of applicants, every teacher who applied was hired. Def.'s Statement ¶ 30; Pl.'s Statement ¶ 30. Plaintiff applied, and she was hired by Mr. Dupee to be an instructor for the summer 2000 Gear Up program. Def.'s Statement ¶ 29; Pl.'s Statement ¶ 29.

Mr. Dupee observed the teachers in their classrooms during the summer. Def.'s Statement ¶ 33; Pl.'s Statement ¶ 33. Plaintiff does not dispute that Mr. Dupee was dissatisfied with Plaintiff's performance during the summer and communicated his dissatisfaction to Plaintiff. Def.'s Statement ¶ 38; Pl.'s Statement ¶ 38. Plaintiff also concedes that she failed to comply with Mr. Dupee's direction that she contact students who did not show up for classes. Def.'s Statement ¶ 45; Pipkin Affidavit at 120. At the end of the summer, Mr. Dupee sent letters of commendation to those teachers who had performed well during the program. Def.'s Statement ¶ 50; Pl.'s Statement ¶ 50. He did not send a letter to Plaintiff. Def.'s Statement ¶ 52; Pl.'s Statement ¶ 52. However, Plaintiff continued as a Gear Up instructor during the fall 2000 session. Pipkin Affidavit at 150.

The Board offered the Gear Up program again in the summer of 2001. Def.'s Statement ¶ 53; Pl.'s Statement ¶ 53. However, there was a sizeable increase in pay for instructors for the summer 2001 program. Def.'s Statement ¶ 54; Pl.'s Statement ¶ 54. In fact, applications exceeded positions by nearly 2-1, and as a result a Teacher Selection Committee was formed to select instructors. Def.'s Statement ¶ 57; Pl.'s Statement ¶ 57; Def.'s Statement ¶ 58; Pl.'s Statement ¶ 58. The members were: Defendant Leroy Dupee, who was then serving as a consultant for both the State Department of Education ("DOE") and the Board; a 33-year old African-American female who was employed by the State DOE; Defendant Jorge Pezo, a 39-year

old Hispanic male; and a 33-year old white female.  Def.'s Statement ¶ 59; Pl.'s Statement ¶ 59.

The Committee met and assessed the qualifications of each applicant.  Def.'s Statement ¶ 60; Pl.'s Statement ¶ 60.  It is undisputed that as to Plaintiff's application, Mr. Dupee played a critical role and expressed his dissatisfaction with Plaintiff's performance during the summer 2000 program.  Def.'s Statement ¶ 69; Pl.'s Statement ¶ 69.  Mr. Dupee told the Committee members that during the summer of 2000, Plaintiff had not followed the required curriculum despite his requests and had not contacted the parents of absent students, as she had been asked to do.  Def.'s Statement ¶¶ 65-66; Pl.'s Statement ¶¶ 65-66.  It is undisputed that the Committee members deferred to Mr. Dupee's negative assessment of Plaintiff, and as a result, they voted unanimously not to offer Plaintiff a position as an instructor for the summer 2001 program.  Def.'s Statement ¶¶ 69-70; Pl.'s Statement ¶¶ 69-70.  Plaintiff was the only MRT who was not offered a position for the summer program.  Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 6.

Plaintiff claims that she was denied a position during the summer 2001 Gear Up Program because of her race and her age.  Compl. ¶¶ 18, 23.  Defendants do not seriously dispute that Plaintiff has made a *prima facie* showing of discrimination.  *See, e.g., Fisher v. Vassar College*, 114 F.3d 1332, 1335 (2d Cir. 1997) (en banc); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000).  Defendants have also satisfied their similarly minimal burden to articulate a legitimate nondiscriminatory reasons for their decision: Mr. Dupee, the Director of the Gear Up Program, was unhappy with several aspects of Plaintiff's performance during the summer 2000 program and with many more applicants than positions for the summer 2001 program, the other members of the Teacher Selection Committee deferred to Mr. Dupee's recommendation that Plaintiff not be hired because of her performance problems.  *See Bickerstaff v. Vassar College*,

6

196 F.3d 435, 446 (2d Cir. 1999).

The critical question for purposes of the present motion, therefore, is whether Plaintiff has produced evidence from which a jury could rationally conclude that the Defendants' stated reason for not hiring Plaintiff for the summer 2001 Gear Up Program was because of her race or age and that the real reason for their action was discrimination. *See Schnabel v. Abramson*, 232 F.3d 83, 88-89 (2d Cir. 2000) ("[T]o defeat a defendant's properly supported motion for summary judgment, a plaintiff must show that there is a material issue of fact as to whether (1) the employer's asserted reason for [the challenged action] is false or unworthy of belief *and* (2) more likely than not the employee's [race or] age was the real reason for the [action].").

Mindful of the need to draw all reasonable inferences in favor of the Plaintiff and that when an employer's intent is at issue, this Court must be especially cautious about granting summary judgment, the Court nonetheless concludes that Defendants are entitled to judgment as a matter of law because on the basis of the present record no rational jury could conclude that the real reason Plaintiff was not hired for the summer 2001 Gear Up Program was because of her race or age.

It is undisputed that Plaintiff was hired in the summer of 2000 by the same individual, Mr. Dupee, who recommended strongly that she not be hired in the summer of 2001 because of acknowledged performance problems. Mr. Dupee is also African-American and he is older than Plaintiff. Moreover, the Teacher Selection Committee, which voted unanimously not to hire Plaintiff, is composed of two African-Americans, one Hispanic individual, and one white individual. *See* Def.'s Statement ¶¶ 24, 29, 59, 69-70; Pl.'s Statement ¶¶ 24, 29, 59, 69-70. While those undisputed facts are not necessarily determinative, they do weigh heavily against

Plaintiff's claim.  Moreover, it is undisputed that there were many more applicants than available positions for the summer 2001 program, Def.'s Statement ¶ 57, Pl.'s Statement ¶ 57; therefore it is perfectly sensible that Mr. Dupee and the Committee would decline to hire a teacher who had performance problems during the prior summer.

In the face of this substantial evidence of a legitimate nondiscriminatory reason for the Defendants' actions, it is fair to say that Plaintiff proffers only one piece of evidence in rebuttal. She points out that some of the instructors who were hired for the summer of 2001 program were both white and younger than Plaintiff and they had less experience than Plaintiff and/or lacked a certification that Plaintiff held.[4]  *See* List of Unaccepted Applications [doc. #48], Ex. 7 ("Unaccepted Applications"); *see also* List of Accepted Applications [doc. #48], Ex. 8 ("Accepted Applications").  While those facts are true, Plaintiff ignores other statistics.  For example, the instructors hired for the summer 2001 program were a very diverse group of instructors, one-half of whom were members of minority groups.  *See* Accepted Applications. Also, the three African-American females who were selected as instructors were all over 50 years of age, including a 69 year-old, an undisputed fact that belies any claim of age discrimination. *Id.*  Finally, the Committee chose not to hire several white applicants who were younger than Plaintiff and who held the same certification as Plaintiff.  *See* Unaccepted Applications.  In short, the statistics on applicants and hires – the only evidence that Plaintiff has proffered in support of

---

[4] Plaintiff also points to the fact that she remained a Gear Up instructor for the fall of 2000.  That is undisputed.  However, it is also undisputed that it was not until the summer of 2001 that the Gear Up program was faced with having more applicants than they had positions. Therefore, it was not until the summer of 2001 that the program had to made choices about which instructors to hire.  And it was then that Plaintiff's performance problems during the summer of 2000 came back to haunt her.

her claim of pretext – are at best inconclusive and, at worst, they undermine Plaintiff's claim. *See Robinson v. Metro-North R.R. Co.*, 267 F.3d 147, 158 n.5 (2d Cir. 1999) ("Within the *McDonnell Douglas* individual disparate treatment model . . . statistical evidence is only one small part of a substantial web of evidence indicating pretext.") (quoting *Bell v. EPA*, 232 F.3d 546, 553 (7th Cir. 2000)); *see also Plair v. E.J. Brach & Sons, Inc.,* 103 F.3d 343, 349 (7th Cir. 1997) (reaffirming the Circuit's holding that, while admissible as evidence, "statistics are improper vehicles to prove discrimination in disparate treatment (as opposed to disparate impact) cases")).

Because no rational jury could conclude that race or age discrimination was the real reason for the Committee's decision not to hire Plaintiff for the summer 2001 Gear Up Program, Defendants' are entitled to summary judgment on that claim.

**B.**

In 2002, Defendant Board of Education implemented a district-wide plan to eliminate the position of Mathematics Resource Teacher ("MRT") and replace it with a new position, Numeracy Coach. Def.'s Statement ¶ 108; Pl.'s Statement ¶ 108. At the time, Plaintiff was an MRT assigned to the Blackham School. Def.'s Statement ¶ 84; Pl.'s Statement ¶ 84. Neither MRTs nor Numeracy Coaches are assigned to classrooms. MRTs principally work either one-on-one with students or with small groups of students who need special assistance with mathematics. By contrast, the principal focus of Numeracy Coaches is to work with teachers to improve their instruction of mathematics. Deposition of Ricardo Rosa [doc. # 48] at 46, Ex. 4 ("Rosa Affidavit"). Plaintiff does not claim that the decision to eliminate the MRT position and replace it with the Numeracy coach was unlawfully motivated.

In June 2002, Plaintiff was informed that she, and four other MRTs, would be transferred from their now eliminated positions as MRTs back into classroom assignments. Def.'s Statement ¶¶ 111, 112; Pl.'s Statement ¶¶ 111, 112. Plaintiff was asked for her preferences regarding grade level, subject, and school assignment and ultimately, Plaintiff chose to take a position as a sixth grade teacher at the Barnum School for the 2002-2003 school year. Def.'s Statement ¶¶ 118, 123; Pl.'s Statement ¶¶ 118, 123. In making her selection, Plaintiff voluntarily chose not to take one of several open positions as a Math Teacher and an available Math Resource Teacher position. Def.'s Statement ¶¶ 124-26, 129-131; Pl.'s Statement ¶¶ 124-26; 129-131. It is undisputed that Plaintiff's salary, fringe benefits, and retirement benefits were unaffected by her transfer from the now eliminated MRT position to the sixth grade at Barnum School. Def.'s Statement ¶ 106; Pl.'s Statement ¶ 106.

Plaintiff and several other MRTs who were transferred back to classroom positions filed grievances over their transfers, and in the spring of 2003, those grievances were settled. Def.'s Statement ¶¶ 133-34; Pl.'s Statement ¶¶ 133-34. As a part of that settlement, Plaintiff was offered Numeracy Coach assignments at two schools, but she declined both and chose instead to remain a sixth grade teacher at Barnum School. Def.'s Statement ¶ 135; Pl.'s Statement ¶ 135. Plaintiff claims that her transfer to the classroom from her MRT position was based upon her age and race.[5] Pl.'s Mem. in Opp. to Mot. for Summ. J.at 9-10, 17-18.

---

[5] At argument, Plaintiff's counsel acknowledged that the positions of MRT and Numeracy Coach were essentially equivalent and that a transfer from MRT to Numeracy Coach would not constitute an adverse employment action. Therefore, Plaintiff's counsel conceded that from the point in time that Plaintiff was offered (and then declined) to accept a position as Numeracy Coach, she would have no claim under ADEA or Title VII, and that her age and race claim is limited to the 2003-2003 school year only.

Defendants argue that Plaintiff's 2002 transfer from MRT to classroom teacher is not an adverse employment action and that as a consequence, Plaintiff cannot satisfy the third requirement of her *prima facie* case for either age or race discrimination. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973). Even though a plaintiff's burden in establishing a *prima facie* case is minimal, *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998), the Court agrees with Defendants that Plaintiff has not established the adverse employment action prong of her *prima facie* case.

The Second Circuit defines "adverse employment action" as occurring when a plaintiff endures a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal citations omitted); *see Williams v. R.H. Donneley Corp.*, 368 F.3d 123, 128 (2d Cir. 2004). A material adverse change is a change in working conditions that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (quoting *Crady*, 993 F.2d at 136). However, an "adverse job action is not limited solely to loss or reduction of pay or monetary benefits. It can encompass other forms of adversity as well." *Foster-Bey*, 296 F. Supp. 2d at 204 (internal quotations omitted); *see Patrolmen's Benevolent Ass'n v. New York*, 310 F.3d 43, 51 (2d Cir. 2002) (transfer may constitute an adverse employment action).

The Second Circuit's decision in *Galabya* is instructive in this case. There, a teacher sued for age discrimination over a transfer that required him to teach outside his area of expertise and at a school with inferior facilities. The Second Circuit affirmed the district court's grant of summary judgment for the defendant Board of Education on the ground that the teacher had failed to show that his transfer was an adverse employment action within the meaning of *McDonnell Douglas*. The court held that the disparity in working conditions, which required the teacher to rotate through classrooms rather than have his own classroom, was too minor as a matter of law to constitute an adverse employment action. *Galabya*, 202 F.3d at 636. The court also rejected the teacher's claim that his transfer out of special education classes was sufficiently significant to qualify as an adverse employment action. In particular, the court stated that "a transfer is an adverse employment action if it results in a change in responsibilities so significant as to constitute a setback in the plaintiff's career." *Id.* "The key," said the court, was that "the plaintiff must show that a transfer created a 'materially significant disadvantage.'" *Id.* (Internal citations and quotations omitted).

Here, as in *Galabya*, Plaintiff has failed to show that her transfer was an adverse employment action. At argument, Plaintiff's counsel acknowledged that there was no evidence in the record that Plaintiff's career had suffered any setback as a result of her return to the classroom. Plaintiff has not put forth any evidence that her prospects for advancement have been negatively affected or that her current position is less prestigious an assignment than a Numeracy Coach Position or her former position as MRT. And, it is undisputed that her salary and benefits remained unchanged. Def.'s Statement ¶ 106; Pl.'s Statement ¶ 106.

Plaintiff points to two differences between her current assignment and the MRT position

that she believes qualify as adverse. First, she correctly notes that in her current position she must teach subjects other than mathematics and that therefore, the new position is less well suited to her skills and expertise. *See Galabya*, 202 F.3d at 636. While that is true, it is Plaintiff and not Defendants who are to blame for this situation – it is undisputed that Plaintiff was offered positions as a high school mathematics teacher for the 2002-2003 school year, and she turned them all down in favor of her current position. Yet, as a Math Teacher, Plaintiff would only have had to teach mathematics, which is her area of expertise. Def.'s Statement ¶ 131; Pl.'s Statement ¶ 131. Indeed, Plaintiff even turned down the position of Numeracy Coach when it was offered for the 2003-2004 school year because she wished to remain a sixth grade teacher. Def.'s Statement ¶¶ 135-36; Pl's Statement ¶¶ 135-36. It is, therefore, difficult to credit Plaintiff's claim that because she voluntarily chose to teach social studies and other courses beyond mathematics, Defendants should be charged with taking an adverse employment action against Plaintiff.

     Second, Plaintiff complains that she is now assigned a classroom whereas an MRT (or a Numeracy Coach) do not have classroom assignments. While that is true, the Court concludes that this is precisely the kind of minor and insubstantial disparity in working conditions that *Galabya* held did not, as a matter of law, constitute an adverse employment action. Once again, the fact that when she was offered the position of Numeracy Coach for the 2003-2004 school year, which would have freed Plaintiff of any classroom assignments, she turned the job down further undermines Plaintiff's assertion that holding a classroom assignment is sufficiently

deleterious as to rise to the level of an adverse employment action.[6]

Therefore, Defendants are entitled to summary judgment on Plaintiff's claim that her transfer in 2002 violated Title VII or ADEA.

### C.

Plaintiff's final claim, for intentional infliction of emotional distress claim, is also based on Defendants' failure to hire her for the summer 2001 Gear Up program, her transfer from the MRT position in 2002 ,and on alleged conduct of Mr. Perachio, who is not a defendant and was the principal of the school where Plaintiff worked in 2002.  Under Connecticut law, to state a claim for intentional infliction of emotional distress, "a plaintiff must allege that: (1) the defendant intended or knew that emotional distress would likely result from its conduct; (2) the defendant's conduct was extreme or outrageous; (3) the defendant's conduct caused plaintiff's distress; and (4) plaintiff's distress was severe." *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000).  Even if conduct is distressing and hurtful to the plaintiff, that does not necessarily satisfy the requirement of extreme or outrageous conduct. *Dollard v. Bd. of Educ.*, 63 Conn. App. 550, 552-53 (Conn. App. Ct. 2001) (concerted scheme to force teacher to resign and or to become so

---

[6] If the Court were wrong on Plaintiff's failure to make a showing of an adverse employment action, the Court would also grant Defendants summary judgment on Plaintiff's failure to show that Defendants' actions were pretexts for discrimination.  Plaintiff has failed to come forward with any evidence that would permit a trier of fact to conclude that Defendants' actions were motivated by race or age discrimination.  The MRT position was eliminated district-wide.  While Plaintiff was not offered a Numeracy Coach position for the 2002-2003 school year, Plaintiff was not alone; other MRTs were also not offered a Numeracy Coach position during that school year.  There is nothing to suggest that race or age played any role in that decision, and therefore, Defendants would be entitled to summary judgment on that basis as well. *See Mario v. P&C Food Markets, Inc.*, 313, F.3d 758, 767 (2d Cir. 2002) (concluding that, even assuming plaintiff met his *prima facie* burden, summary judgment was appropriate on employment discrimination claim because plaintiff failed to submit any proof that defendant's legitimate non-discriminatory reasons for its actions were pretextual).

distraught they could terminate her employment was insufficient to make out an intentional infliction claim); *see, e.g., Abate*, 130 F. Supp. 2d at 348; *Thomas v. St. Francis Hosp.*, 990 F. Supp. 81, 92 (D. Conn. 1998), *aff'd*, 198 F.3d 235 (2d Cir. 1999); *Johnson v. Cheesebrough-Pond's USA, Inc.*, 918 F. Supp. 543, 552-53, *aff'd*, 104 F.3d 355 (2d Cir. 1996).

At argument, Plaintiff's counsel acknowledged that her intentional infliction of emotional distress claims regarding the 2001 summer program and 2002 transfer are based solely on her assertion that those actions violated Title VII and ADEA. Since the Court has already held that Defendants' did not violate Title VII or ADEA, Plaintiff has no basis for an intentional infliction of emotional distress claim based on those actions. As to Mr. Perachio's conduct in 2002, the Court concludes that even accepting Plaintiff's claims as true and giving her the benefit of all reasonable inferences, his alleged conduct does not come close to the level of extreme or outrageous conduct required by Connecticut law. *See Dollard*, 63 Conn. App. at 552. Accordingly, Defendants are entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim.

### III.

The Motion For Summary Judgment [doc. # 40] filed by all Defendants except Mr. Dupee is GRANTED. Mr. Dupee is the only remaining defendant. He has only recently been served and has not yet appeared. However, since Plaintiff's claims against Mr. Dupee appear to be identical to those which she has advanced against the other defendants, all of whom have been granted summary judgment, Plaintiff must notify the Court no later than **July 6, 2004** whether she intends to pursue her claims against Mr. Dupee following the Court's decision or whether the Court can grant summary judgment in favor of Mr. Dupee on the same grounds as stated in this

decision, thereby permitting the entry of final judgment and allowing this case to be closed.

IT IS SO ORDERED,

/s/         Mark R. Kravitz<br>
      United States District Judge

Dated at New Haven, Connecticut**:** June 21, 2004