UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SCARLETT PIPKIN, | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | No. 3:03CV19 (MRK) |
| | : | |
| BRIDGEPORT BOARD OF | : | |
| EDUCATION, ET AL | : | |
|     Defendant | : | August 25, 2004 |

### AFFIDAVIT OF LEROY DUPEE

I, Leroy Dupee, being duly sworn, depose and say:

1. I am an individual residing at 25 Newton Street, Milford, Connecticut 06460 and am named as a defendant in the above-captioned lawsuit. My date of birth is June 16, 1943, and I am African-American.

2. I was employed by the Bridgeport Board of Education for 35 years as a mathematics teacher and then as a math supervisor. I retired in June of 2000 at the end of 1999-2000 school year.

3. On April 8, 2004, I was served with a summons and a copy of the Corrected Amended Complaint dated May 2, 2003 in this action. Prior to this lawsuit, I had never been sued and was unfamiliar with legal proceedings and what I was supposed to do. Upon receipt of the summons and Corrected Amended Complaint, I telephoned the United States District Court Clerk's Office in New Haven. The person with whom I spoke to in the clerk's office whose name I do not recall told me to call the plaintiff's attorney. On or about April 9, 2004, I telephoned the law office of the plaintiff's attorney and spoke with an attorney named Marc Glenn. Attorney Glenn was very cordial and told me that he could not advise me on anything.

He did not tell me to retain my own attorney, and my impression from our conversation, apparently mistaken, was that the legal documents I had received were not a matter of concern. Subsequent to my conversation with Attorney Glenn, I did not seek to retain my own counsel or take any other action in regard to this lawsuit until August 21 when I received in the mail a copy of the Plaintiff's Motion for Default Judgment.

     4.     On Saturday, August 21, 2004 I received a copy of the Plaintiff's Motion for Default Judgment dated August 20, 2004. On Monday, August 23, 2004 I telephoned the law firm of Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. and spoke with Attorney Pamela J. Coyne to inquire if that firm could represent me in connection with this action. In a follow-up telephone conversation that morning, Attorney Coyne informed me that her law firm would not represent me.

     5.     On Monday August 23rd and Tuesday August 24th, I telephoned several attorneys in an effort to find an attorney to advise and represent me in this case.

     6.     On the morning of Tuesday, August 24, 2004 I went to the clerk's office at the New Haven District Court and filed a pro se appearance. That afternoon, I met with Attorney Warren L. Holcomb and retained him as my attorney in this case.

     7.     My failure to retain an attorney earlier or to file an appearance or an answer to the Corrected Amended Complaint was due to my lack of understanding of the law and legal ramifications and was not willful.

     8.     I did not receive a copy of the Plaintiff's Motion for Default Entry filed by the plaintiff on July 2, 2004.

     9.     I retired from the Bridgeport Board of Education in June of 2000. During the summer of 2000, I was the Director of the Gaining Early Awareness and Readiness for

Undergraduate (Gear Up) program, a federally-funded grant program designed to increase the number of low income students who are prepared to enter and succeed in post-secondary education. The Bridgeport Board of Education received a Gear Up program grant for a six-week summer program to prepare students in algebra. In the summer of 2000, I was paid by the Bridgeport Board of Education and therefore believe that I was employed by the Board. During the summer of 2000, fewer teachers applied than were needed to fill all of the instructor positions in the Gear Up program, and therefore every teacher who applied was hired. The plaintiff, Scarlett Pipkin, was one of the teachers hired by me for the summer 2000 Gear Up program.

11. During the summer 2000 Gear Up program, I observed the program teachers, including Mrs. Pipkin, in their classrooms. Mrs. Pipkin did not perform well teaching algebra during the summer of 2000, and I communicated my dissatisfaction with her performance to her. Due to her poor performance, students initially assigned to her were moved to another teacher who was more proficient in teaching selected mathematical concepts. In addition, the plaintiff's responsibilities as a Gear Up program teacher included calling parents to inform them of their children's progress and when students did not show up for classes. The plaintiff did not contact the parents as required even though I directed her to do so. In sum, I was dissatisfied with the plaintiff's performance as an algebra instructor in the summer 2000 Gear Up program.

12. I also served as the Director of the Bridgeport Board of Education Gear Up program in the summer of 2001. During the summer of 2001, I served as a consultant and was paid by the State Department of Higher Education. Due to a substantial increase in pay provided to teachers for the summer 2001 Gear Up program, many more applications were received than the number of teacher positions available. A teacher selection committee was formed to make hiring recommendations to Dr. Ricardo Rosa, who at that time was the interim mathematics

director for the Board of Education of the City of Bridgeport. The members of the committee were myself, Jorge Pezo, a mathematics specialist, Carol Burkes and Kathy Gumbos who were Gear Up program coordinators. Our committee met, screened the qualifications of each applicant, and voted on each applicant. The committee then submitted its recommendations to Dr. Rosa. During the committee's evaluation of the plaintiff's application, Jorge Pezo and I voiced our dissatisfaction with the plaintiff's performance during the summer 2000 Gear Up program. The committee voted unanimously not to recommend the plaintiff for hire as a teacher for the summer 2001 Gear Up program.

13. My vote not to recommend hiring the plaintiff for the 2001 Gear Up program was based solely on the performance problems I had observed firsthand during the prior summer. Neither the plaintiff's age nor race had anything to do with my decision, and to the best of my knowledge, did not play a role in the decisions of any of the other three members of the committee. Speaking for myself, all of my recommendations were based strictly on who I believed were the best algebra teachers and thus would further the mission of best teaching the students to learn algebra.

14. Insofar as the plaintiff's claim that in 2002 she was demoted and given an involuntary transfer from math resource teacher to classroom teacher, I was retired at that time and had nothing to do with her transfer.

15. I always treated the plaintiff respectfully and never harassed her or did anything to cause her emotional distress.

16. In February of 2004 I was deposed in this case by the plaintiff's attorney. I do not have a copy of the transcript of my deposition.

17. I believe that I have meritorious defenses to all of the plaintiff's claims and if the Court sets aside the default, I will expeditiously file an answer to the complaint and diligently defend this action.

//s// _____
Leroy Dupee

Subscribed and sworn to before me this 25th day of August, 2004.

//s//_____
Warren L. Holcomb, Esq.
Commissioner of Superior Court