UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SCARLETT PIPKIN, | : | |
| Plaintiff | : | |
| | : | |
| v. | : | No. 3:03CV19 (MRK) |
| | : | |
| BRIDGEPORT BOARD OF | : | |
| EDUCATION, ET AL. | : | |
| Defendant | : | September 14, 2004 |

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS AND
MOTION TO DISMISS THE TITLE VII AND ADEA CLAIMS
FOR LACK OF SUBJECT MATTER JURISDICTION

I.     PRELIMINARY STATEMENT

The plaintiff is a mathematics teacher who has been employed by the defendant

Bridgeport Board of Education for over thirty-two years.  Defendant Leroy Dupee is a former

employee of the Bridgeport Board of Education who retired from his position as mathematics

director for grades K-8 in June of 2000 and served as the director of the summer 2000 and

summer 2001 Gear Up Programs in the Bridgeport public schools.

The plaintiff's Corrected Amended Complaint contains five counts.  The first count

purports to allege Section 1981 and Section 1983 claims based on alleged violations of the

plaintiff's Fourteenth Amendment substantive due process, procedural due process and equal

protection rights.  Counts two and three allege claims for intentional infliction of emotional

distress and negligent infliction of emotional distress, respectively.  In count four the plaintiff

alleges that she was harassed and discriminated against due to her race and color in violation of

Title VII.  Count five alleges age discrimination in violation of the ADEA.

With respect to defendant Dupee, all of the plaintiff's claims are predicated on her not being hired as a teacher in the Summer 2001 Gear Up Program.  Defendant Dupee was retired and did not participate in any of the acts alleged to have occurred in connection with the Plaintiff's employment subsequent to the summer of 2001.

On or about March 17, 2004 all of the defendants, except for Mr. Dupee, filed a motion for summary judgment, a memorandum of law in support thereof and supporting affidavits of Carol Birks, Kathleen Gombos and defendant Jorge Pezo, excerpts from the depositions of defendant Dupee and the plaintiff, and various exhibits.  The plaintiff in her opposing papers filed an affidavit and excerpts from her depositions.  Defendant Dupee refers to and adopts those previously filed affidavits, depositions and exhibits in support of his motion for summary judgment, and supplements them with his affidavit which is concurrently filed herewith. Citations to the record evidence in this memorandum of law and in defendant Dupee's Local Rule 56(a)1 Statement are to the previously filed affidavits, deposition excerpts and exhibits.

II.    FACTS

Rather than repeating the facts, defendant Dupee incorporates by reference the facts as recited in pages 5 through 23 of the Memorandum of Law in Support of Motion for Summary Judgment dated March 17, 2004 filed by the other defendants herein, as though set forth again herein in full.

III.    STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be rendered if "the pleadings, depositions, answers to interrogatories and admissions on file,

together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.Proc.56(c); Anderson v. Liberty Lobby, Inc. 477 US 242, 250, 106 S.Ct. 2505 91, Ld2 202, (1986). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party, "and facts are material to the outcome if application of the relevant substantive law requires their determination." Anderson v. Liberty Lobby, Inc., supra, 477 US at 248. The moving party bears the burden of proof to establish that no genuine issue exists as to any material fact. Celotix Corp. v. Catrett, 477 US 317, 323, 106 S.Ct. 2548 91, Ld2 265 (1986). If the moving party meets its burden, the burden then shifts to the party opposing summary judgment who "may not rest upon mere allegations or denials" but must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P.56(e).

To defeat a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly prohibitive, summary judgment may be granted." Anderson, 477 U.S. at 249-50. Summary judgment is proper only when no rational finder of fact "could find in favor of the non-moving party because the evidence to support its case is so slight." Gallo v. Prudential Residential Servs. Ltd. Partnership, 22 F.3d, 1219, 1223 (2d Cir. 1994). The Court must view all inferences and ambiguities in favor of the party opposing the summary judgment motion. See, Matsushita Elec. Indus. Co., supra, 477 U.S. 574-587-88; Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

IV.    ARGUMENT

In connection with the prior motion for summary judgment filed by the other defendants,

the plaintiff abandoned, *inter alia*, her Fourteenth Amendment claims asserted in Count One and

the Title VII hostile work environment claim asserted in Count Four of the Complaint.

(Memorandum of Decision dated June 4, 2004).  Notwithstanding the plaintiff's abandonment of

her Fourteenth Amendment claims as to all other defendants, in the event that the plaintiff

decides to assert them against him, defendant Dupee will address those claims.

A.    As A Matter Of Law The Plaintiff's Fourteen Amendment Right To Be Free From
      Deprivation Of Liberty Without Due Process Of Law Was Not Violated.

In order to establish a claim under 42 U.S.C. § 1983, a plaintiff must allege and prove

that the defendant acted under color of law and as a result of the defendant's action, the plaintiff

suffered a denial of her federal or constitutional rights.  Annis v. County of Westchester, 136

F.3d 239, 245 (2d Cir.1998); see, also, Giordano v. City of New York, 274 F.3d 740, 750 (2d

Cir.2001).  The Supreme Court has enunciated two alternative tests to establish a substantive due

process claim.  Under the first test, a plaintiff must prove that the governmental actor's conduct

"shocks the conscience."  Rochin v. California, 342 U.S. 165, 172-73, 72 S.Ct. 205, 209-10, 96

L.Ed 183 (1952).  Substantive due process is not a protection for any "government action that is

'incorrect or ill-advised,'" Lowrenz v. Achtyl , 20 F.3d 529, 537 (2d Cir.1994) (quoting Bishop

v. Wood, 426 U.S. 341, 350 (1976)).  The Second Circuit has noted that "the protections of

substantive due process are available only against grievous conduct which goes beyond merely

offending some fastidious squeamishness or private sentimentalism and can fairly be viewed as

so brutal and offensive to human dignity as to shock the conscience."  Smith v. Half Hollow

Hills Cent. Sch. Dist., 298 F.3d 168, 173 (2d Cir.2002) (quoting Johnson v. Glick, 41 F.2d 1028,

1023 n.6, *cert. denied*, 414 U.S. 1033, 94 S.Ct. 1462, 38 L.Ed.2d 324 (1973).  "The acts must be such as 'to offend even hardened sensibilities,' or constitute force that is 'brutal' and 'offensive to human dignity.'" Johnson, 41 F.2d at 1033 n.6.

The only conduct on defendant Dupee upon which the plaintiff bases her due process liberty Section 1983 claim is that Dupee voiced to the other members of the Selection Committee his dissatisfaction with the plaintiff's performance during the 2000 Gear Up Program, recommended that the other members of the Selection Committee vote not to recommend hiring her for the 2001 Gear Up Program, and himself voted against recommending her for hire.  That conduct on the part of defendant Dupee clearly falls far short of Rochin's "shocks the conscience" standard, and no reasonable juror could find that it did.  See Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (State university's decision not to rehire professor did not implicate a liberty interest under the Fourteenth Amendment because there was no suggestion that the teacher's "good name, reputation, honor or integrity" was at stake nor that the university had imposed upon him "a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities"); Perry v. Sinderman, 408 U.S. 593, 599, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (mere showing that a teacher was not rehired in a particular job, without more, did not amount to a showing of loss of liberty); Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630 (2d Cir.1996, cert. denied, 519 U.S. 1150, 117 S.Ct. 1083 (1997) (failure to rehire does not implicate constitutionally-protected liberty interest absent special aggravating circumstances that "impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession.")  Id. at 630-31.

In the instant case, there is no evidence that the plaintiff's failure to be selected as a teacher impugned her professional reputation as a teacher or prevented her from continuing to work as a teacher during the regular school year. Indeed, it is undisputed that the plaintiff continued to work as a Math Resource Teacher during the ensuing 2001-2002 school year. In addition, the plaintiff admitted she did not even apply for any other teaching programs in the summer of 2001 or subsequent summers, nor did she seek teaching positions in any other after-school programs. Furthermore, in the instant case, the plaintiff has admitted the fact that defendant Dupee was dissatisfied with her performance during the 2000 Gear Up Program. That dissatisfaction constituted a legitimate non-discriminatory reason for Mr. Dupee not recommending her selection as an instructor for the 2001 summer Gear Up Program.

There is no evidence that the plaintiff's "good name, reputation, honor or integrity" were impugned by her not being selected as an instructor in the summer 201 Gear Up Program nor is there a shred of evidence that her failure to be selected affected her continued ability to practice her teaching profession. In sum, there is no genuine issue of material fact as to whether there was as substantive due process violation of the plaintiff's liberty interest. As a matter of law, there was not.

B.     There Was No Procedural Due Process Violation

In Count One of her Complaint the plaintiff makes the general, conclusory allegation that the defendants violated "her Fourteenth Amendment right to due process of law…" (Complaint, ¶ 26) Even assuming *arguendo* that the plaintiff is alleging that she had a constitutionally protected property interest in being hired for the summer 2001 Gear Up program and was denied procedural due process, defendant Dupee is entitled to summary judgment.

Where a plaintiff asserts a procedural due process claim based on the deprivation of a

property interest, the initial inquiry is whether the plaintiff has an independent contractual or

statutory right giving rise to a legitimate claim of entitlement and thus a constitutionally-

protected property interest.  S&D Maintenance Co., Inc., 844 F.2d 962, 966 (2d Cir.1988).  Here,

the plaintiff was (and still is) employed as a tenured teacher in the Bridgeport Public School

System and thus had a reasonable expectation of continuing to be employed as a teacher during

the regular school year.  However, there is no evidence that the plaintiff had a contractual or

statutory right to be employed as a teacher in the summer Gear Up Programs.  Certification and

seniority do not give rise to a legal entitlement to be employed in the summer Gear Up Programs.

See, Lombard v. Board of Ed of New York City, 645 F.Supp. 15 74, 1577 (E.D.N.Y. 1986)

(teacher certificate insufficient to constitute a legal entitlement to employment as a substitute

teacher).  "[A] unilateral expectation of employment is not a property interest under the

Constitution."  Huff v. West Haven Bd. Of Educ., 10 F.Supp.2d 117, 122 (D.Conn.1998)

(requiring a plaintiff to establish that "she has a constitutionally-protected legitimate claim of

entitlement to the positions which she sought, rather than an unprotected unilateral expectation of

employment to have a protected property interest.")  The plaintiff's expectation to be hired to

teach in the summer 2001 Gear Up Program was not a property interest protected by the

Fourteenth Amendment.  Defendant Dupee therefore is entitled to summary judgment on that

claim because the record is devoid of any evidence from which a jury could reasonably infer that

the plaintiff had a reasonable entitlement to employment as a math instructor for the 2001

summer Gear Up Program.

In Count One the plaintiff implies that the defendants, including Dupee, did not take into

consideration the factors required to be considered by the provisions of the collective bargaining

agreement between the Bridgeport Education Association and the Board. (Complaint, ¶¶ 18 &19)  Assuming *arguendo* that the collective bargaining agreement applied to the Gear Up Programs, then the grievance and arbitration provisions of the collective bargaining agreement provided the plaintiff with an avenue of redress for any alleged violation.  See, Harhay v. Town of Ellington Board of Education, 323 F.3d 206, 213 (2d Cir. 2003).  In fact, the plaintiff filed a grievance against her employer, the Bridgeport Board of Education, over her failure to be hired as an instructor for the summer 2001 Gear Up Program.

Moreover, as a member of the Selection Committee, Dupee was acting as an agent of the employer, the Bridgeport Board of Education, and any obligation to provide the plaintiff with due process relating her not being hired for the summer 2001 Gear Up Program would lie with the Board.  Having abandoned and withdrawn her due process claims against the Board and all of the other individual defendants, the plaintiff cannot pursue those claims against defendant Dupee.  In any event, the record is completely devoid of any evidence that plaintiff was deprived of procedural due process by defendant Dupee or any other defendant.

C.      Equal Protection

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated be treated alike."  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 87 L.Ed2 313 (1985).  The Supreme Court permits "equal protection claims brought by a 'class of one' where the plaintiff alleges she has been intentionally treated differently from others similarly situated and there was no rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  The Second Circuit has explained that to bring a claim under Olech, "plaintiffs can recover if they

can show that they were treated differently from similarly situated [persons],… and that there

was 'no rational basis for the difference in treatment.'" <u>Cobb v. Pozzi</u>, 363 F.3d 89, 110 (2d

Cir.2003) (quoting <u>Olech</u>, 528 U.S. at 564).

Based on the record evidence, there is no genuine issue as to the fact that the plaintiff was

not hired for the summer 2001 Gear Up Program because of performance problems during the

2000 summer Gear Up Program.  There is no record evidence that any teacher who, like the

plaintiff, had performance problems in the summer 2000 Gear Up Program was hired as an

instructor for the summer 2001 Gear Up Program.  Thus, there is not a shred of evidence that any

other teacher hired for the 2001 summer Gear Up Program was "similarly situated" to the

plaintiff.  Accordingly, the plaintiff's equal protection claim fails as a matter of law.


D.      <u>The Section 1981 Claims</u>

There are some differences between Section 1981 claims and Section 1983 claims, but

none that are applicable here.  The same standards apply in analyzing claims under 42 U.S.C. §

1981 and § 1983.  Defendant Dupee is entitled to summary judgment on the 1981 claims in

Count One for the same reasons that he is entitled to summary judgment on the 1983 claims.


E.      <u>Defendant Dupee Is Entitled To Summary Judgment On Count Two For Intentional
        Infliction of Emotional Distress</u>

With respect to defendant Dupee, the plaintiff's claim for intentional infliction of

emotional distress is based entirely on Dupee's participation in the decision not to hire the

plaintiff as an instructor for the summer 2001 Gear Up Program.  Under Connecticut law, in

order to sustain a claim for intentional infliction of emotional distress, "a plaintiff must allege

and prove that: (1) the defendant intended or knew that emotional distress would likely result

from its conduct; (2) the defendant's conduct was extreme or outrageous; (3) the defendant's

conduct caused the plaintiff distress; and (4) plaintiff's distress was severe." Appleton v. Bd. of

Educ., 254 Conn. 205, 210 (2000).

Whether the defendant's conduct was sufficiently extreme and outrageous to satisfy the

"extreme and outrageous"element is a question in the first instance for the court; only where

reasonable minds can differ does it become an issue for the jury. Bell v. Board of Education, 55

Conn.App. 400, 409-10 (1999); Mellaly v. Eastman Kodak Co., 42 Conn.Supp. 17, 18 (1991).

"Liability for intentional infliction of emotional distress requires conduct exceeding all bounds

usually tolerated by decent society, of a nature which is especially calculated to cause, and does

cause, mental distress of a very serious kind. Thus, it is the intent to cause injury that is the

gravamen of the tort." Bell v. Board of Education, 55 Conn. App. 400, 409 (1999); Petyan v.

Ellis, supra, 200 Conn. at 254 n.5; Delaurentis v New Haven, 220 Conn. 225, 267 (1991) A line

can be drawn between the slight hurts which are the price of a complex society and the severe

mental disturbances inflicted by intentional actions wholly lacking in social utility. Whelan v.

Whelan Co., 41 Conn. Supp. 519, 522-23 (1961) Thus, "liability has been found only where the

conduct has been so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." "The plaintiff must allege and prove conduct considerably more egregious than

that experienced in the rough and tumble of every day life." Id., 522

In Appleton, the plaintiff, a tenured teacher, claimed intentional infliction of emotional

distress on the ground that one of the defendants made condescending comments to her in front

of her colleagues, questioned her vision and ability to read, telephoned the plaintiff's daughter

and suggested the plaintiff should take a few days off, and telephoned the police and had her

escorted out of the building to her car.  In addition, the plaintiff in Appleton was subjected to

psychiatric evaluations, forced to take a suspension and a leave of absence, and forced to resign.

Id. at 211.  The Connecticut Supreme Court stated that although "[t]hese occurrences may well

have been distressing and hurtful to the plaintiff…[t]hey do not…constitute extreme and

outrageous conduct…" Id.  See also, Dollard v. Bd. of Educ, 63 Conn.App. 550, 777 A.2d 714

(2001)  (concerted scheme to force school employee to resign or to become so distraught the

defendants could terminate her consisting of hypercritical examination of every small detail of

the employee's professional and personal conduct, transfer to a school to which she did not want

to be assigned, and public admonishment held insufficient to rise to the level of extreme and

outrageous required to support a claim for intentional infliction of emotional distress); Johnson v.

Cheeseborough Ponds, USA Co., 918 F.Supp. 543, 552 (D.Conn.1996), *aff'd*, 104 F.3d 355 (2d

Cir. 1996) (summary judgment on intentional infliction claim proper because employer's sudden

discharge of employee and physically escorting the employee from the building like a criminal

insufficient to constitute extreme and outrageous conduct).

The only evidence the plaintiff relies upon to support her intentional infliction of

emotional distress claim against defendant Dupee is that she was denied a teaching position in

the Gear Up Program for the summer of 2001 and that the denial letter signed by Mr. Dupee and

the acting Bridgeport Public Schools Mathematics Director arrived several days late in what she

believed was a recycled envelope that was not delivered by the postman.  That conduct is

innocuous compared with the far more egregious conduct in the Appleton and Dollard cases held

as a matter of law to be insufficient to support a claim for intentional infliction of emotional

distress under Connecticut law.

Based on the foregoing, defendant Dupee is entitled to summary judgment on the intentional infliction of emotional distress claim in Cout Two of the Complaint.

F.    The Defendant Is Entitled To Summary Judgment On The Negligent Infliction Of Emotional Distress Claim.

Under Connecticut law, a claim for negligent infliction of emotional distress in the employment context arises only when it is based on unreasonable conduct of the defendant in the termination process.  Perodeau v. City of Hartford, 259 Conn. 729, 762-63 (2002); accord, Abate v. Circuit-Wise, Inc., 130 F.Supp. 2d 341, 346 (D.Conn. 2001)   Since the plaintiff was not terminated, defendant Dupee is entitled to summary judgment on the negligent infliction of emotional distress claim in Count Three of the complaint.

G.    The Title VII Claims

The Fourth Count of the Complaint alleges discrimination and harassment on account of race and color in violation of Title VII.  In connection with the prior motion for summary judgment filed by the other defendants, the plaintiff abandoned the Title VII hostile work environment claim asserted in Count Four.  In any event, there is no evidence that defendant Dupee harassed the plaintiff.

With respect to the Title VII discrimination claim, the Court in its prior ruling granted summary judgment in favor of the defendant Bridgeport Board of Education and other defendants. (Memorandum of Decision dated June 21, 2004)  It is well established that there is individual liability under Title VII.  Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir.2004)(district court properly dismissed the Title VII claims against the individual defendants); Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (1995)("individual defendants with

supervisory control over a plaintiff may not be held personally liable under Ttitle VII."),

abrogated on other grounds by <u>Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998)</u>.  The

Court lacks subject matter jurisdiction as to the plaintiff's Title VII claim against defendant

Dupee as an individual or in the alternative defendant Dupee is entitled to summary judgment on

those claims.


H.      <u>The ADEA Claim</u>

        This Court granted summary judgment in favor of the Bridgeport Board of Education on

the ADEA claim asserted in the Fifth Count of the Complaint. (Memorandum of Decision dated

June 21, 2004).  It is undisputed that defendant Dupee in his capacity as the Director of the

summer 2001 Gear Up Program in the Bridgeport Schools was a consultant with both the

Bridgeport Board of Education and the State Department of Higher Education. (Dupee depo., pp.

5-6)  The ADEA permits an action against Mr. Dupee solely in his capacity as an agent of the

Board, not in his individual capacity, and this Court's grant of summary judgment in favor of

defendant Bridgeport Board of Education therefore compels that summary judgment also be

granted in favor of defendant Dupee.  "Although the Second Circuit has not yet ruled definitively

on the issue of individual liability under the ADEA, the consensus among District Courts in this

circuit is that, given the similarity in the statutory definitions of "employer" the result is the same

as under Title VII." <u>Brown v. Lawrence Stevens Fashions, Inc.</u>, 2004 WL 691211 *1 (S.D.N.Y.

March 31, 2004) copy attached; see, also, <u>Sekor v. Capwell</u>, 1 F.Supp.3d 140 (D.Conn.1998)

citing <u>Donovan v. Eastern Milk Processors Cooperative Association, Inc.</u>, 971 F.Supp. 674, 679

(N.D.N.Y.1997) (individual liability does not attach under the ADEA) and <u>Cullen v. Putnam</u>

<u>Savigs Bank, Inc.</u>, 1997 WL 280502 at *3-4 (D.Conn. May 17, 1997)(supervisors may not be

held personally liable under the ADEA.)  That there is no individual liability under the ADEA, see also, Stults v. Conoco, Inc., 76 F.3d 651 (5th Cir. 1996); Smith v. Lomax, 45 F.3d 402, 403 n.4 (11th Cir. 1995); Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510-11 (4th Cir.), cert. denied, 115 S.Ct. 666 (1994); Miller v. Maxwell's International, Inc., 991 F.2d 583, 587-88 (9th Cir.1993), cert. denied, 114 S.Ct. 1049 (1994).

Accordingly, defendant Dupee is entitled to summary judgment on the ADEA claim in Count Five of the Complaint or to have that claim dismissed against him under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction.

## V.      CONCLUSION

For all of the foregoing reasons, defendant Leroy Dupee respectfully requests this Court to grant summary judgment in his favor on all claims alleged in the Complaint.  With respect to the Title VII and ADEA claims directed against him, in the alternative, defendant Dupee requests that this Court grant his motion to dismiss those claims for lack of subject matter jurisdiction.

RESPECTFULLY SUBMITTED
Defendant Leroy Dupee


//s//_____
Warren L. Holcomb, Esq.
Berchem, Moses & Devlin, P.C.
75 Broad Street
Milford, CT  06460
(203) 783-1200
Fed. ID #13127
e-mail wholcomb@bmdlaw.com