UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SCARLETT PIPKIN, | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | No. 3:03CV19 (MRK) |
| | : | |
| BRIDGEPORT BOARD OF EDUCATION, ET AL. | : | |
| | : | |
|     Defendant | : | September 14, 2004 |

DEFENDANT DUPEE'S LOCAL RULE 56(a)1
STATEMENT OF UNDISPUTED FACTS

Pursuant to L.Civ.R. 56(a)1, for the purposes of the summary judgment motion only, defendant Leroy Dupee contends there is no genuine issue to be tried as to the following material facts:

1. Plaintiff has been employed as a teacher by the Board for over thirty-two (32) years. (Plaintiff depo., p. 36)

2. Gear Up is a school reform initiative which provides low income students with skills to enable them to get a post-secondary education. (Birks aff., ¶4)

3. The Gear Up Program is a grant program that includes the following: partnering with local school districts to initiate a systemic curriculum reform effort; implementation of a comprehensive professional development plan; development and delivery of parent programs; design and delivery of after-school programs focused on positive development; and coordination of mentoring and tutoring programs for academic support. (Birks aff. ¶4)

4. At all relevant times, there was a concerted effort by the Bridgeport Board of Education to move Algebra I from high school down to the 8th grade level. (Dupee depo., p.8)

5.  A summer Gear Up Program designed to provide students with the necessary skills to be competitive in algebra was initiated to achieve the objective of moving Algebra I down to an 8th grade level.  (Dupee depo., pp. 7-8)

6.  The program, which covered certain schools in the cities of Bridgeport, New Haven and Hartford, involved six middle schools in Bridgeport.  The Bridgeport Board of Education also received a grant to initiate a Gear Up Program and, as a result, administered it in another seven schools.  (Birks aff., ¶¶ 5&6)

7.  During her employment with the Board, plaintiff worked in a non-classroom setting as an elementary school remedial Mathematics Resource Teacher (MRT) for many years, including during the 1999-2000 and the 2000-2001 school years. (Plaintiff depo., pp. 30, 31, 34; Rosa depo., p.18).

8.  Defendant Leroy Dupee was employed by the Bridgeport Board of Education for approximately 35 years, and for a number of years served as a mathematics supervisor until his retirement in June of 2000.  (Dupee aff. ¶ 3; Dupee depo., ¶ 3)

9.  During the time that Dupee was a math supervisor, the plaintiff was supervised by him.  (Dupee depo., pp. 6, 31)

10.  Dupee, in conjunction with the school principal, was responsible for giving the plaintiff annual performance appraisals.  In Dupee's opinion, the plaintiff was competent in her role as a remedial MRT, and in the appraisals, including the one for the 1999-2000 school year, he evaluated her as performing at a satisfactory level as an MRT. (Dupee depo., p.34, 36)

11.  The Gear Up Program was an enrichment program taught in a classroom setting and the curriculum was not remedial in nature.  (Dupee depo., pp. 59-60; Rosa depo., p. 14)

19484\1

12. The first summer session of the Gear Up Program took place in the summer of 2000. (Dupee depo., p. 8 & 63)

13. Leroy Dupee served as Director of the 2000 summer Gear Up Program, and was employed as a consultant by the Bridgeport Board of Education. (Dupee depo., pp. 5-9).

14. There was a posting to solicit candidates for the Summer 2000 Gear Up Program. (Dupee depo., pp. 9 & 10)

15. The Gear Up Program needed candidates who had the necessary skills to effectively deliver a quality program to students, based on a curriculum that was provided by the Bridgeport Board of Education, and who had the necessary skills to deliver that program. (Dupee depo., p. 10)

16. The Gear Up Program for the Summer of 2000 received fewer applications than the number of instructor positions that needed to be filled. (Dupee depo., p.11)

17. Due to the insufficient number of candidates for the Summer 2000 Program, all teachers who applied were accepted. (Dupee depo., pp. 10-12, 30-31)

18. Plaintiff applied for the Summer 2000 Program and was hired. (Dupee depo., pp. 11 & 31)

19. Because of the shortfall in applicants, candidates for the summer 2000 Program were solicited from outside of the Bridgeport Public School District and the openings were reposted within the District. (Dupee depo., pp. 11 & 37)

20. Teachers in the summer 2000 Gear Up Program were expected to adhere to a certain curriculum, which was considered to be the minimal curriculum taught to students. (Dupee depo., pp. 10 & 12; Exh. 2)

19484\1

21. Leroy Dupee physically visited the classrooms to observe teachers, including the plaintiff, at least three to four times over the course of the summer 2001 Gear Up Program. (Dupee depo., p. 13)

22. When Leroy Dupee observed plaintiff's classroom, he had concerns about her performance. (Dupee depo., p. 13)

23. Leroy Dupee's primary concerns with plaintiff's performance were the quality of the delivery of instruction and certain skills, particularly in the area of teaching the effective use of the graphing calculator, which was an integral component of the curriculum. (Dupee depo., pp. 13, 38-39)

24. Some or all of the plaintiff's students were combined with another class and taught the effective use of the graphing calculator by another teacher. (Dupee depo., pp. 14 &39)

25. Leroy Dupee was not satisfied with plaintiff's performance in the Summer 2000 Gear Up Program. (Dupee depo., pp. 39-40)

26. Leroy Dupee told plaintiff in the summer of 2000 that the quality of her delivery of instruction to students had to be improved. (Dupeee depo., p. 14, 39-41)

27. In addition to Leroy Dupee's concerns with respect to the quality of plaintiff's instruction, Leroy Dupee was dissatisfied with her failure to carry out her responsibilities in regard to telephoning the parents of students who missed classes. (Dupee depo., p. 40)

28. During the summer of 2000, Leroy Dupee specifically asked plaintiff to call the parents of students who did not show up for classes. (Dupee depo., pp. 14, 39-41)

29. The Plaintiff told Dupee in a meeting at which one or more other Gear Up teachers were present that she thought the guidance counselor should make the calls to the

parents, but Dupee insisted that calling parents was a responsibility of the teachers. (Plaintiff depo., pp. 120 & 122)

30. After the meeting, the plaintiff made two calls to parents whose children did not show up for class, but then she stopped calling parents of students who missed classes. (Dupee depo., pp. 119 & 122)

31. The Plaintiff failed to comply with Leroy Dupee's directive that she contact parents of students who did not show up for her classes in the Summer 2000 Gear Up Program. (Plaintiff depo., pp. 119-122; Pipkin aff. p. 120)

32. There were no formal evaluations of teachers in the Gear Up Program. (Dupee depo., p. 42)

33. At the conclusion of the Summer 2000 program, then Assistant Superintendent Kenneth Henrici sent letters to everyone who participated in the program. (Dupee depo., p. 15; Exh. 3)

34. The letter sent by Kenneth Henrici to teachers in the Summer 2000 Program was not at Leroy Dupee's recommendation. (Dupee depo., p. 15; Exh. 3)

35. Leroy Dupee personally sent a letter of commendation to certain staff in the Gear Up Program of Summer 2000, in which he acknowledged appreciation for them administering the program at the level of expectation. (Dupee depo., pp. 16; Exh. 4)

36. The letter from Leroy Dupee was sent only to those individuals, who, in his professional opinion, administered the way it was designed to be administered. (Dupee depo., pp. 16; Exh. 4)

37. Leroy Dupee did not send the letter of commendation to plaintiff. (Dupee depo., pp. 16-17; Ex. 4)

19484\1

38.     Dupee had concerns about some of the other teachers in the summer 2000 Gear Up Program, and he did not recommend any of the teachers who did not receive the letter of commendation from him for hire in the summer 2001 Gear Up Program.  (Dupee depo., p. 51)

39.     The Gear Up Program was held again the summer of 2001.  (Dupee depo., pp. 8 & 17)

40.     Leroy Dupee was the Director of the summer 2001 Gear Up program and in that position was a consultant paid by the State of Connecticut, Department of Higher Education. (Dupee depo., pp. 7-9)

41.     There was a sizable increase in the pay from the previous summer for instructors in the summer 2001 Gear Up Program.  (Dupee depo., p. 10, 17; Exh. 5)

42.     As in the prior summer, there was an application to solicit candidates for the Program.  (Dupee depo., pp. 17-18, Exh. 5)

43.     In May 2001, plaintiff applied for a position in the summer 2001 Gear Up Program.  (Plaintiff depo., p. 107; Dupee depo., p. 21)

44.     At the time she applied, the plaintiff was 53 years of age.  (Plaintiff affidavit)

45.     The number of applicants for the summer 2001 Gear Up Program was approximately double the number of positions for the Summer 2000 program.  (Dupee depo., p. 64, Exs. 7 & 8)

46.     A Teacher Selection Committee ("Committee") was formed in 2001.  (Dupee depo., p. 18; Pezo aff., ¶5; Birks aff., ¶7; Gombos aff., ¶4)

47.     The members of the Teacher Selection Committee were:

    *Leroy R. Dupee, Program Director, retained by the State of Connecticut, Department of Higher Education, 58 years old (at that time), Black, African-American Male;

    *Carol Birks, Gear Up Site Coordinator, employed by the State of Connecticut, Department of Higher Education, 33 years old (at that time), Black, African-American, Female;

    *Kathy Gombos, Gear Up Site Coordinator, employed by the Bridgeport Board of Education, 33 years old (at that time), White, Female; and

    *Jorge Pezo, Mathematics Curriculum Specialist, employed by the Bridgeport Board of Education, 39 years old (at that time), Hispanic, Male.

(Dupee depo., pp. 5, 18-20; Pezo aff., ¶5; Birks aff., ¶7; Gombos aff., ¶4)

  48. The Committee met to review applications, screen applicants and review recommendations, which were submitted to the Mathematics Department of defendant Board. (Dupee depo., p. 20; Pezo aff., ¶5; Birks aff., ¶7; Gombos aff., ¶4)

  49. Each applicant's application was assessed individually by the Committee with respect to his or her knowledge, experience and ability to teach algebra and geometry. (Pezo aff., ¶4; Birks aff., ¶7; Gombos aff., ¶4)

  50. The Committee was looking for candidates who could administer the Program effectively and possessed the necessary skills to do so. (Dupee depo., p. 21; Pezo aff., ¶5; Birks aff., ¶7; Gombos aff., ¶4)

  51. It was a round table voting process, with each member having a vote. (Dupee depo., pp. 21-22; Pezo aff., ¶5; Birks aff., ¶7; Gombos aff., ¶4)

19484\1

52. With respect to plaintiff's application, Leroy Dupee provided his input to the other Committee members regarding her performance during the summer 2000 Program in that he advised them that plaintiff did not follow curriculum. (Dupee depo., pp. 21-22; Pezo aff., ¶10; Birks aff., ¶12; Gombos aff., ¶9)

53. Leroy Dupee further advised the Committee that plaintiff failed to contact parents of students who did not show for classes. (Pezo aff., ¶10; Birks aff., ¶12; Gombos aff., ¶9)

54. Leroy Dupee recommended that the Committee vote against recommending the Plaintiff for hire as an instructor for the Summer 2001 Program. (Dupee depo., pp. 21-22 ; Pezo aff., ¶10, 11; Birks aff., ¶12, 13; Gombos aff., ¶9, 10)

55. Based upon Leroy Dupee's input, the Committee did not recommend plaintiff for a position in the Summer 2001 Gear Up Program. (Pezo aff., ¶8, 9, 11; Birks  aff., ¶¶ 10, 11, 13; Gombos ff., ¶¶ 7, 8, 10)

56. The decision of the Committee was unanimous. (Dupee depo., p. 22; Pezo aff., ¶8; Birks aff., ¶10; Gombos aff., ¶7)

57. Dupee's decisions and votes on whether or not to hire teachers for the summer 2001 Gear Up Program were based solely on his opinions as to their competency to teach to the curriculum and what was in the best interest of the students in terms of preparing the students who had enrolled in the program for algebra. (Dupee depo., pp. 25 & 41)

58. Neither the race, color nor age of the Plaintiff was a factor in Dupee's decision and vote not to recommend her for hire for the summer 2001 Gear Up Program. (Dupee depo., p. 22)

59. At or around the time of plaintiff's application for the Summer 2001 Gear Up Program, defendant Ricardo Rosa held the position of Assistant Director of Mathematics. (Rosa depo., pp. 5-7)

60. Leroy Dupee told Rosa that teachers were asked to call parents in the summer 2000 Program because attendance was low and that plaintiff said it wasn't her job. (Rosa depo., pp. 48-51)

61. Acceptance and rejection letters under the names of Dupee and Rosa were mailed to applicants to the summer 2001Gear Up Program. (Dupee depo., pp. 22-25; Plaintiff depo., p. 136; Ex. 6)

62. On June 7, 2001, plaintiff received a letter informing her that her application to teach in the summer 2001 Gear Up Program had been rejected. (Plaintiff depo., p. 127-28, 143; Dupee depo, p. 24)

63. The Plaintiff, or her Union on her behalf, filed a grievance under the grievance and arbitration provisions of the collective bargaining agreement between the teachers union and the Bridgeport Board of Education over her failure to be hired by the Board. (Plaintiff depo., p. 128)

64. A diverse group of individuals taught in the Summer 2001 Gear Up Program. (List of Accepted Applicants [doc. #48], Ex. 8)

65. Of the applicants hired, there were three Black females, six White Female, two White males and one Asian male. The three Black female teachers are each over 50 years of age: Carolyn Coleman (55), Ruth Garth (52) and Freddie McReynolds (69). (Id.)

66. Dupee neither participated in nor was involved in any way with the decision to transfer the plaintiff to a classroom teaching assignment or with any other decision or matter

19484\1

subsequent to June 2001 relating to the plaintiff's employment as a teacher by the Bridgeport Board of Education. (Dupee aff. ¶ 5)

                                                                  Respectfully submitted
Defendant Leroy Dupee

_____
Warren L. Holcomb, Esq.
Berchem, Moses & Devlin, P.C.
75 Broad Street
Milford, CT  06460
(203) 783-1200
Fed. ID #13127
e-mail wholcomb@bmdlaw.com

19484\1